OPINION OF THE COURT
Hall, J.
On this appeal, the plaintiff invites this Court to depart from its precedent in Pipia v Nassau County (34 AD3d 664 [2006]), *66 and to hold, contrary to the determination in Pipia, that the institution of a cause of action alleging a violation of Labor Law § 741 does not constitute a waiver of other causes of action relating to the alleged retaliatory discharge. For the reasons that follow, we decline the plaintiff’s invitation and reaffirm our holding in Pipia.
The facts of this case, as alleged in the complaint, are as follows:
The plaintiff was employed by the defendant Good Samaritan Hospital (hereinafter the Hospital) for 24 years as a licensed practical nurse. In January 2007, the Hospital opened a cardiac care unit. Soon after the cardiac care unit was opened, the plaintiff observed that the rate at which the Hospital was placing “highly acutely ill patients” on non-critical care floors had “skyrocketed.” She alleged in the complaint that the Hospital began putting those patients on non-critical floors due to a shortage of intensive care beds. The increase in the number of highly acutely ill patients on non-critical floors increased the workload of the nurses on non-critical floors, but the Hospital did not adjust the ratio of nurses to patients to compensate for the increase in workload. As a result, there were not enough nurses during each shift to adequately care for all patients, which threatened the quality of patient care on the non-critical floors, including the patients in the plaintiffs medical unit.
According to the complaint, this practice continued for three years, during which time the plaintiff and other nurses complained to their union representatives and supervisors. In response, the Hospital’s administration would typically advise the plaintiff and other nurses that they should just “do the best they could,” without offering any real solution or taking steps to protect the quality of patient care. During that same three-year period, the plaintiff also observed a significant increase in the number of mechanically ventilated patients, who required significant time-consuming care, on non-critical floors, including the plaintiff’s medical unit. From the fall of 2008 to the spring of 2009, the plaintiff documented the increased placement of mechanically ventilated patients in her unit, and the burden this placed on the nursing staff.
In April 2009, the plaintiff informed her union representative of her concerns about the shortage of experienced nursing staff, the burden placed on the nurses by the increase of highly *67 acutely ill patients on non-critical floors, and the detrimental impact those factors had on the quality of patient care. At the recommendation of her union representative, the plaintiff raised her concern with her supervisor.
During the same three-year period, the plaintiff also observed that most nurses on duty were inexperienced, new graduates, with less than one year of experience working in a hospital setting with patients. The plaintiff observed that, often, a unit would be staffed entirely with nurses of less than one year of experience, and that based on the Hospital’s policy, none of those nurses would be qualified to take charge of the unit. On one night in May 2009, the Hospital “cancelled” the most experienced nurse scheduled to work the night shift in the plaintiff’s unit, and instead used a pediatric nurse who was “floated in” from another unit. The Hospital gave the pediatric nurse a patient assignment of six patients and directed her to train the other nurse on duty, who was newly graduated from nursing school. In addition, the pediatric nurse was to take charge of the unit because all other nurses lacked the seniority or experience to do so. According to the complaint, this was “way too much responsibility for one person” and exposed the patients to inadequate care, placing them in danger. The plaintiff became aware of this situation and, prior to the beginning of her shift, reported her concern to the supervisor in charge. According to the complaint, the plaintiff was perceived by the Hospital and its director of nursing as a vocal critic of the Hospital’s policies, based on her disclosures to her supervisor.
The complaint alleged that the above-described practices of the Hospital violated 10 NYCCR parts 405 and 407, as well as other statutes, rules, and regulations.
On May 23, 2009, a security camera near the Hospital’s morgue was reportedly damaged. Three days later, on May 26, 2009, the plaintiff reported for her shift, but was advised by Hospital personnel that she had been suspended for suspicion of having damaged the camera. That same day, the plaintiffs attorney asked to see the video footage which the Hospital claimed to have of the incident. The request was denied, but, thereafter, the plaintiff was informed by her supervisor that she had been cleared and was permitted to return to work the following day.
On the following day, the plaintiff reported to the Hospital for her shift. At approximately 12:30 p.m., the plaintiff received a call from Dr. Micky Sharma, who requested that the plaintiff *68 schedule a peripherally inserted central catheter (hereinafter PICC) line for a patient. Pursuant to the Hospital’s policy, the plaintiff entered the request into the Hospital’s computer system. Subsequently, another doctor, Dr. Kenneth Rowin, consulted with Dr. Sharma and it was determined that a PICC line was not needed. Dr. Rowin therefore wrote on the patient’s chart, “Hold PICC Line.” In accordance with the Hospital’s policy, the plaintiff took the patient’s chart to the secretary for the unit and asked her to enter Dr. Rowin’s order into the computer system. The regularly scheduled secretary was out that day, and a secretary from pediatrics had been “floated in” to replace her. The complaint alleged that, upon information and belief, the substitute secretary neglected to enter Dr. Rowin’s order into the computer system.
Despite the note on the patient’s chart to hold the PICC line, the PICC line was administered to the patient by a radiology nurse. According to the complaint, when the error was discovered, the Hospital used that as a pretext to terminate the plaintiffs employment on June 9, 2009. No other Hospital employees were disciplined as a result of the incident.
As a result, the plaintiff commenced this action against the Hospital and its parent companies, the defendants Bon Secours Health System, Inc. and Bon Secours Charity Health System, Inc. (hereinafter collectively the Hospital defendants), and other individual defendants, alleging a violation of Labor Law § 741. With respect to that cause of action, the complaint alleged, inter alia, that the plaintiff believed in good faith that the improper quality of patient care which she reported to her supervisors presented an imminent threat to public safety and/or to the health of a specific patient. The complaint further alleged that the Hospital took retaliatory action against the plaintiff when it terminated her employment.
The complaint also asserted causes of action based on a violation of the New York State Constitution, the New York Human Rights Law, tortious interference with a business relationship, intentional infliction of emotional distress, negligent screening, hiring, supervising, disciplining and retention of employees, and negligent infliction of emotional distress.
The Hospital defendants moved, inter alia, pursuant to CPLR 3211 (a) (7) to dismiss the complaint insofar as asserted against them. The Supreme Court, inter alia, denied that branch of the Hospital defendants’ motion which was to dismiss the cause of action alleging a violation of Labor Law § 741, and granted that *69 branch of the motion which was to dismiss the remaining causes of action on the ground that the plaintiff waived those causes of action by instituting an action pursuant to Labor Law § 741. Relying on this Court’s decision in Pipia v Nassau County (34 AD3d 664 [2006]), the Supreme Court reasoned that, since a cause of action under Labor Law § 741 is enforced pursuant to Labor Law § 740 (4) (d), the “waiver” provision of Labor Law § 740 (7) applied.
The Hospital defendants appeal from so much of the Supreme Court’s order as denied that branch of their motion which was to dismiss the Labor Law § 741 cause of action insofar as asserted against them, and the plaintiff cross-appeals from so much of the order as granted that branch of the Hospital defendants’ motion which was to dismiss the remaining causes of action insofar as asserted against them. We affirm the order insofar as appealed and cross-appealed from.
On a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must accept the facts alleged in the complaint as true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory (see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]; Leon v Martinez, 84 NY2d 83, 87 [1994]).
A cause of action based upon Labor Law § 740, known as the Whistleblower Law, is available “to an employee who discloses or threatens to disclose an employer activity or practice which (1) is in violation of a law, rule or regulation, and (2) creates a substantial and specific danger to the public health” (Lamagna v New York State Assn. for Help of Retarded Children, 158 AD2d 588, 589 [1990]; see Deshpande v TJH Med. Servs., P.C., 52 AD3d 648, 650 [2008]; Pipia v Nassau County, 34 AD3d at 665). “Labor Law § 740 (4) creates a cause of action in favor of an employee who has been unlawfully discharged as a consequence of engaging in certain protected conduct” (Pipia v Nassau County, 34 AD3d at 665).
Labor Law § 741, often referred to as the Health Care Whistleblower Law, offers special protection to health care employees who “perforad ] health care services” (Labor Law § 741 [1] [a]; see Reddington v Staten Is. Univ. Hosp., 11 NY3d 80, 89 [2008]). Specifically, Labor Law § 741 (2) (a) provides that “no employer shall take retaliatory action against any employee because the employee . . . discloses or threatens to disclose to a supervisor, or to a public body an activity, policy or practice of *70 the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care.” “A cause of action alleging a violation of Labor Law § 741 (2) differs from a cause of action alleging a violation of Labor Law § 740 (2) in that such a complaint is required to allege only a good faith, reasonable belief that there has been a violation of the applicable standards, rather than an actual violation” (Pipia v Nassau County, 34 AD3d at 666; see Labor Law § 741 [2] [a], [b]). A complaint asserting a violation of Labor Law § 741 (2) (a) must nonetheless allege conduct that “constitutes improper quality of patient care,” which is defined as “any practice, procedure, action or failure to act of an employer which violates any law, rule, regulation or declaratory ruling adopted pursuant to law, where such violation relates to matters which may present a substantial and specific danger to public health or safety or a significant threat to the health of a specific patient” (Labor Law § 741 [1] [d]; see Deshpande v TJH Med. Servs., P.C., 52 AD3d at 650).
Here, the complaint states a cause of action pursuant to Labor Law § 741 (2) (a). In the complaint, the plaintiff alleged that the Hospital’s practice of placing highly acutely ill and mechanically ventilated patients on non-critical floors without increasing the number of experienced nurses on those floors violated 10 NYCRR parts 405 and 407. In relevant part, 10 NYCRR 405.1 (a) provides that “[gjeneral hospitals . . . shall comply with all of the requirements of this Part.” 10 NYCRR 405.5 provides, in relevant part, that “[t]he governing body shall ensure that the hospital has an organized nursing service that provides 24-hour services and that meets the care needs of all patients in accordance with established standards of nursing practice.” In addition, “[t]he hospital shall provide supervisory and staff personnel for each department or nursing unit to ensure, when needed in accordance with generally accepted standards of nursing practice, the immediate availability of a registered professional nurse for bedside care of any patient” (10 NYCRR 405.5 [a] [2]).
The regulations further provide that primary care hospitals and critical access hospitals “shall have an organized nursing service” with
“adequate numbers of licensed registered nurses, licensed practical nurses and other personnel to provide nursing care to all patients as needed. There shall be supervisory and staff personnel for each *71 department or nursing unit to ensure the immediate availability within 20 minutes of a registered nurse for bedside care of any patient” (10 NYCRR 407.9 [b]).
Granting the plaintiff the benefit of all favorable inferences, the complaint sufficiently alleges that the Hospital engaged in conduct that the plaintiff, in good faith, reasonably believed constituted improper quality of patient care. The complaint adequately alleges that the Hospital’s practice of placing highly acutely ill and mechanically ventilated patients on non-critical floors, without increasing the number of experienced nurses on such floors, violates 10 NYCRR 405.5 and 407.9 (b), and may present a substantial and specific danger to public health or safety, or a significant threat to the health of a specific patient (see Labor Law § 741 [1] [d]). Furthermore, the complaint sufficiently alleges that the Hospital terminated the plaintiff’s employment in retaliation based on her disclosures to her supervisors. Accordingly, the Supreme Court properly denied that branch of the Hospital defendants’ motion pursuant to CPLR 3211 (a) (7) which was to dismiss the plaintiffs Labor Law § 741 cause of action insofar as asserted against them.
However, the plaintiff waived her remaining causes of action by instituting a cause of action alleging a violation of Labor Law § 741.
Labor Law § 741 (4) provides that “[a] health care employee may seek enforcement of this section pursuant to [Labor Law § 740 (4) (d)].” “Thus, rather than creating its own private right of action, Labor Law § 741 contemplates enforcement through a Labor Law § 740 (4) civil suit” (Reddington v Staten Is. Univ. Hosp., 11 NY3d at 89).
Labor Law § 740 (7), which contains the Whistleblower Law’s “waiver” provision, provides:
“Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any other law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law.”
As recognized by the Court of Appeals in Reddington v Staten Is. Univ. Hosp. (11 NY3d 80 [2008]), the documents in the Bill *72 Jacket repeatedly refer to Labor Law § 740 (7) as an “election-of-remedies” provision, in which a plaintiff must choose whether to file a Labor Law § 740 whistleblower cause of action or some other claim (see Reddington v Staten Is. Univ. Hosp., 11 NY3d at 87, citing Mem of Pub Empl Relations Bd, Bill Jacket, L 1984, ch 660 at 16).
In Pipia v Nassau County (34 AD3d 664 [2006]), the plaintiffs initial complaint set forth various causes of action, including causes of action pursuant to Labor Law § 740, arising from the plaintiffs alleged unlawful termination (see Pipia v Nassau County, 34 AD3d at 665). When faced with a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), the plaintiff cross-moved for leave to file an amended complaint alleging that the defendants violated Labor Law § 741 (2), to substitute that allegation for his allegation that the defendants violated Labor Law § 740 (2), and to add factual allegations to the other causes of action asserted in the original complaint (see Pipia v Nassau County, 34 AD3d at 665). This Court determined that the allegations in the complaint failed to state a cause of action pursuant to Labor Law § 740, and that the allegations in the proposed amended complaint were insufficient to establish a “good ground” for granting leave to amend the complaint to assert a cause of action alleging a violation of Labor Law § 741 (2) (see Pipia v Nassau County, 34 AD3d at 666).
This Court went on to hold that the second through eighth causes of action alleged in the complaint, all of which arose from the allegedly unlawful discharge, should have been dismissed pursuant to Labor Law § 740 (7) (see Pipia v Nassau County, 34 AD3d at 666). This Court stated that the mere commencement of an action under Labor Law § 740 (4) acted as an election of remedies, waiving other causes of action relating to the alleged retaliatory discharge, irrespective of the disposition of such claims (see Pipia v Nassau County, 34 AD3d at 667). Then, this Court reasoned that, because a claim alleging a violation of Labor Law § 741 (2) is enforced pursuant to Labor Law § 740 (4) (d), “the same waiver is effected by the institution of a cause of action alleging a violation of Labor Law § 741 (2)” (Pipia v Nassau County, 34 AD3d at 667). Consequently, this Court found that dismissal of the second through eighth causes of action would have been required even if the plaintiffs amended claim had been pleaded initially (id.).
On this appeal, the plaintiff contends that the language in Pipia holding that the waiver provision of Labor Law § 740 (7) is *73 implicated by a cause of action alleging a violation of Labor Law § 741 (2) is dicta and should not be followed. However, even if the subject language was dicta, it was a well-reasoned and accurate statement of the law. Thus, we reaffirm our ruling in Pipia that the institution of a cause of action alleging a violation of Labor Law § 741 implicates the election-of-remedies provision of Labor Law § 740 (7), and, as a result, constitutes a waiver of all causes of action relating to the allegedly unlawful discharge.
While the plaintiff is technically correct that the waiver provision of Labor Law § 740 (7) is in a separate subdivision from the enforcement provision of Labor Law § 740 (4) (d), the Court of Appeals has stated that “every section 741 claim expressly relies on and incorporates section 740 for purposes of enforcement” (Reddington v Staten Is. Univ. Hosp., 11 NY3d at 88). It necessarily follows that, since the commencement of an action under Labor Law § 740 (4) acts as an election of remedies, then so does the commencement of an action under Labor Law § 741 (2), as such a cause of action can only be enforced pursuant to Labor Law § 740 (4) (d).
Moreover, our decision in Pipia is consistent with “the entire point of section 740 (7)’s waiver provision,” which is to “prevent duplicative recovery” (Reddington v Staten Is. Univ. Hosp., 11 NY3d at 89). It makes little sense to prohibit duplicative recovery when a cause of action is brought pursuant to Labor Law § 740, but not when brought pursuant to Labor Law § 741, especially since the Labor Law § 741 cause of action expressly invokes and is enforced pursuant to Labor Law § 740 (4) (d). Since it was the intent of the legislature to compel a plaintiff to choose whether to file a Labor Law § 740 whistleblower claim or some other claim, it follows, then, that a plaintiff must similarly choose between filing a Labor Law § 741 health care whistleblower claim or some other claim. Accordingly, we continue to follow the Pipia rule that the institution of a cause of action pursuant to Labor Law § 741 waives all other causes of action relating to the allegedly unlawful discharge.
Since the remaining causes of action in the complaint relate to the allegedly unlawful discharge, the Supreme Court properly granted that branch of the Hospital defendants’ motion which was to dismiss the remaining causes of action pursuant to CPLR 3211 (a) (7).
Accordingly, the order is affirmed insofar as appealed and cross-appealed from.
*74 Angiolillo, J.E, Dickerson and Belen, JJ., concur.
Ordered that the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.